**UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **LUIS SANCHEZ, ANGELITA SOTO, GLORIA WILLIAMS, THERESA CALMER, JUAN FERNANDEZ, MELISSA OHLER, and JOSHUA DEEN,** | **1:12-CV-00428-LJO-SKO** |
| | **MEMORANDUM DECISION AND ORDER RE MOTION TO DISMISS SECOND AMENDED COMPLAINT (DOC. 69)** |
| **Plaintiffs,** | |
| **v.** | |
| **CITY OF FRESNO, ASHLEY SWEARENGIN, MARK SCOTT, BRUCE RUDD, GREG BARFIELD, JERRY DYER, PHILLIP WEATERHS, MALCOLM DOUGHERTY, and DOES 1-100, inclusive,** | |
| **Defendants.** | |

## I. INTRODUCTION

Plaintiffs, current or former homeless residents of the City of Fresno, allege that their personal property, including property necessary for survival, essential to health, and of personal and emotional value, was seized and immediately destroyed as part of the City of Fresno's efforts to clean up homeless encampments in Downtown Fresno in late 2011 and early 2012. This case is one of more than thirty similar cases filed by homeless individuals arising out of these cleanup activities, all of which have been consolidated for pretrial purposes, with the above-captioned matter serving as the lead case. *See* Doc. 27.

Plaintiff Luis Sanchez's First Amended Complaint ("FAC"), in which he was the only Plaintiff, was the subject of previous motions to dismiss filed by the City of Fresno (the "City") and individual City Defendants Ashley Swearengin, Mark Scott, Bruce Rudd, Greg Barfield, Jerry Dyer, Phillip Weathers, and Malcolm Dougherty (collectively, "Original City Defendants"). Docs. 38-1 & 45. That motion was granted in part and denied in part. *Sanchez v. City of Fresno*, 2012 WL 6719556, --- F. Supp. 2d --- (E.D. Cal. Dec. 26, 2012).

Mr. Sanchez, joined as Plaintiffs by Angelita Soto, Gloria Williams, Theresa Calmer, Juan

1

Fernandez, Melissa Ohler, and Joshua Deen, filed the currently operative Second Amended Complaint

("SAC") on January 28, 2013. Doc. 47. Among other things, the SAC adds thirty-seven (37) additional

Defendants, including eighteen (18) Fresno Police Department Officers ("Police Officer Defendants")

and nineteen (19) other "Municipal Employee Defendants," (collectively, Additional City Defendants).

SAC ¶¶ 20-21. The SAC contains the following causes of action:

1.   Denial of Constitutional Right Against Unreasonable Search and Seizure –
     Fourth Amendment and 42 U.S.C. § 1983;

2.   Denial of Constitutional Right to Life, Liberty and Due Process of Law –
     Fourteenth Amendment and 42 U.S.C. § 1983;

3.   [Skipped in SAC]

4.   Denial of Constitutional Right to Equal Protection of the Laws –
     Fourteenth Amendment and 42 U.S.C. § 1983;

5.   Denial of Constitutional Right Against Unreasonable Search and Seizure –
     California Constitution, Article 1, § 13;

6.   Denial of Constitutional Right to Life, Liberty and Due Process of Law –
     California Constitution, Article 1, § 7(A);

7.   Denial of Constitutional Right to Equal Protection of the Laws –
     California Constitution, Article 1, § 7(A);

8.   California Civil Code § 52.1;

9.   Intentional Infliction of Emotional Distress;

10.  Common Law Conversion; and

11.  Breach of Contract.

On April 2, 2013, Additional City Defendants[1] moved to dismiss the claims against them. Doc.

69-1.[2] Plaintiffs opposed on May 2, 2013. Doc. 77. Additional City Defendants replied on May 8, 2013.

Doc. 80. The hearing, originally set for May 16, 2013, was vacated and the matter taken under

submission on the papers pursuant to Local Rule 230(g). Doc. 78.

---

[1] At the time the motion to dismiss was filed, Additional City Defendants Rick Mendizabal and Leo Heredia had not yet been served. On May 6, 2013, these two defendants joined the previously-filed motion. Doc. 79.
[2] The Original City Defendants also moved to dismiss the SAC. Doc. 48. That motion was resolved by stipulation, Doc. 51.

## II. **BACKGROUND**[3]

The Memorandum Decision and Order addressing the first round of motions to dismiss provides extensive background on previous, related litigation. *Sanchez*, 2012 WL 6719556, *1-2, --- F. Supp. 2d ---. It is not necessary to repeat that information here.

The SAC alleges that beginning in or about September 2011, Defendants set in motion a plan to eradicate a number of small shelters used by homeless individuals in an area in the City of Fresno known generally as "south of Ventura Street." *See* SAC ¶ 27. It is alleged that the Original City Defendants knew these shelters were being used by Plaintiffs as "homes to provide not only protection from the elements but also contained personal property of great personal value and significance to both their physical and emotional health, including personal property such as medications, photographs, and important personal effects from family and loved ones...." *See, e.g.*, SAC ¶ 14. Plaintiffs further allege that the Original City Defendants knew Plaintiffs and others in Plaintiffs' position had no alternative shelter or means of protection from the elements nor any other means of keeping their personal property safe, and that no safe shelter was available to Plaintiffs or to large numbers of other homeless residents, including many Plaintiffs whose cases have been consolidated with this one. *Id*.

Nonetheless, Defendants planned, directed, and implemented the demolition of these shelters and their content, even though Defendants were advised that the process involved the destruction of valuable personal property and the demolition of entire tents and shelters. *See* SAC ¶ 16. It is alleged that Defendants engaged in this conduct "[d]espite the extreme weather conditions" prevailing at the time, and "know or should reasonably know that their conduct threatened plaintiff's continued survival." SAC ¶ 32. According to the SAC, Defendants failed to provide adequate notice of their intent to seize and destroy Plaintiff's property, nor any means of retrieving seized property. SAC ¶ 1.

The SAC contains specific allegations regarding the experiences of each of the named Plaintiffs.

---

[3] These background facts are drawn exclusively from the FAC, the truth of which the Court must assume for purposes of a Rule 12(b)(6) motion to dismiss.

**Theresa Calmer and Julian Fernandez.**

On or about October 27, 2011, Defendants "seized and immediately destroyed essential belongings of plaintiffs Teresa Calmer and Julian Fernandez, including their clothing, their furniture, their personal papers, photographs, books, electronics, and other property and their dwelling, including the materials of which the dwelling had been constructed...." SAC ¶ 29.  Defendants also destroyed two bicycles. *Id*. Plaintiffs Teresa Calmer and Julian Fernandez "had not abandoned the property destroyed by defendants but at all times sought to maintain possession of their property." *Id*.

Both Ms. Calmer and Mr. Fernandez were physically present as the "Municipal Defendants and the Fresno Police Defendants … began the demolition of the property and possessions of the homeless persons in the area in which they lived." SAC ¶ 30. Calmer and Fernandez sought additional time to remove the structure they used as a shelter and requested storage of their property, rather than destruction. *Id.* Municipal Employee Defendants told Plaintiffs that their property would not be destroyed if they picked up the trash on the street and deposited it in a location that would be convenient for the Defendants' equipment to access. *Id*. Plaintiffs cleaned up the trash and Mr. Fernandez left the area to search for a new site to relocate their home. *Id*. Despite their prior assurances, in Ms. Calmer's presence, Defendants destroyed their property. *Id*. Ms. Calmer attempted to enter her wood structure to take any belongings she could claim before her property was destroyed, but Defendants' equipment caused the wood planks to collapse and she had to exit the structure quickly in order to avoid physical injury. *Id*. She was not able to save her belongings or those of Plaintiff Julian Fernandez. *Id*. Defendants "failed and refused to provide any return of their property or for an adequate means for Plaintiffs to recover their property." SAC ¶ 31.

Following the demolition of their shelter and destruction of their property, Julian Fernandez has been forced to move to different locations in an attempt to protect himself and survive. SAC ¶ 32. Defendants forced Plaintiff Julian Fernandez to move and take down his limited shelter, and continue to threaten him with arrest and/or destruction of his property with no or inadequate notice. *Id*. During this period, "temperatures have fallen below 36 degrees Fahrenheit on several occasions and [Mr.]

4

1  Fernandez has been exposed to cold and rainy weather with little or no shelter." *Id.*

2          At some point after October 2011, Teresa Calmer obtained housing through a government

3  program, but Plaintiff Julian Fernandez was not allowed to stay with her. SAC ¶ 32. The allegations in

4  the SAC suggest that Ms. Calmer chose to remain, at least part of the time, with Mr. Fernandez, where

5  she too has been exposed to the elements. *See* SAC ¶¶ 32-33. Ms. Calmer is HIV-positive and has

6  Hepatitis-C. SAC ¶ 32. She claims her conditions have worsened because of Defendants' conduct. *Id.*

7          **Louis Sanchez**

8          In early November 2011, Defendants "seized and destroyed substantially all of Plaintiff

9  Sanchez's personal property, including but not limited to plaintiff's tent, his sleeping bag, his blankets, a

10  small stove used to cook food, as well as plates and utensils needed for eating, important papers, and

11  irreplaceable family photographs, as well as other property necessary for life and survival and property

12  of major personal and emotional significance to plaintiff." SAC ¶ 35. Plaintiff Sanchez concedes that at

13  the time his property was destroyed, he "had left his shelter temporarily for a brief time," but "had in no

14  way either abandoned his shelter or the contents of his shelter." *Id.* When Plaintiff returned to the area,

15  he witnessed Defendants demolishing other property in the area. *Id.*

16          **Joshua Deen and Melissa Ohler**

17          On November 2, 2011, Defendants demolished "the small structure that provided shelter" to

18  Plaintiffs Deen and Ohler, "including the wood of which the structure had been built, as well as much of

19  the contents of the structure." SAC ¶ 38. Plaintiff Ohler was present when Defendants "approached the

20  area with heavy equipment" and was denied "adequate time" to save their property, which was

21  "demolished rather than stored." *Id.* On at least one other occasion, on or about December 15, 2011,

22  while Melissa Ohler was extremely ill, in substantial part due to her exposure to the elements with

23  limited protection, Defendants forced her to remove a tarp that sheltered her from the cold and wet

24  weather. SAC ¶ 41.

25          **Angelita Soto**

26          On November 7, 2011, Defendants "seized and immediately destroyed substantially all of the

personal property belonging to plaintiff Angelita Soto and her family, including but not limited to her tent and its entire contents, which contained all of her clothing and shoes, furniture, bed, blanket and pillows, personal papers, photographs including her wedding pictures and her childrens' wedding pictures, her daughter's baby shower keepsakes and pictures, ice chest, bike and trailer for bike, pots, pans, eating utensils, cups, stoves, propane tank, food, jewelry, DVD player, small and large televisions, reading glasses, books, medicine, flashlight and batteries, dog collar, water jugs, personal hygiene items, firewood and other property necessary for life and survival, and property of a personal nature of significant value...." SAC ¶ 43. Ms. Soto "had not abandoned any of her personal property nor had she provided permission to destroy it." *Id*. Subsequently, on or about December 12, and December 20, 2011, Ms. Soto's shelter and property was again seized and immediately destroyed. SAC ¶ 45.

Following the demolition of her shelter and the destruction of her property, Ms. Soto "has been forced to move to different locations in an attempt to protect herself and survive.... During this period, temperatures have fallen below 36 degrees Fahrenheit on several occasions and plaintiff Angelita Soto has been exposed to cold and rainy weather with little or no shelter," which have cause her to "suffer physical illness." SAC ¶ 44.

**<u>Gloria Williams</u>**

On or about November 8, 2011, Defendants "seized and immediately destroyed essential belongings of plaintiff Gloria Williams, including her clothing, shoes, blankets, a quilt hand printed by her daughter, her medication and vitamins to treat anemia, her personal papers, wallet, birth certificate, social security card, photographs, the ashes of her late mother and urn and her tent." SAC ¶ 48. Ms. Williams "had not abandoned the property destroyed by defendants but at all times sought to maintain possession of her property." *Id*. Although Ms. Williams was not physically present when Defendants approached the area and seized her belongings, she arrived after her belongings were placed into dump trucks that were still in the area. *Id*. When she sought to recover her belongings, in particular the box and urn containing her mother's ashes, Defendants refused to allow her access and informed her she would be arrested if she attempted to look for it herself. *Id*.

Following the demolition of her tent and destruction of her property, "Gloria Williams ha[s] been forced to move to different locations in an attempt to protect herself and survive." SAC ¶ 50. During this period, Ms. Williams "has been exposed to cold and rainy weather with little or no shelter." *Id*.

### III. <u>STANDARD OF DECISION</u>

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. A 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a motion to dismiss for failure to state a claim, the court generally accepts as true the allegations in the complaint, construes the pleading in the light most favorable to the party opposing the motion, and resolves all doubts in the pleader's favor. *Lazy Y. Ranch LTD v. Behrens,* 546 F.3d 580, 588 (9th Cir. 2008).

To survive a 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). Thus, "bare assertions ... amount[ing] to nothing more than a 'formulaic recitation of the elements'... are not entitled to be assumed true." *Iqbal*,

7

556 U.S. at 681. A court should "dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, "a complaint ... must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. To the extent that the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV. DISCUSSION

### A.    Federal (42 U.S.C. § 1983) Claims Against Additional City Defendants.

The SAC asserts that the Additional City Defendants are directly liable under section 1983. The Additional City Defendants argue that the SAC does not link adequately any of them to the alleged federal Constitutional violations. Doc. 69-1 at 6. Defendants advance two related arguments: (1) municipal employees may not be held liable "merely for being present at the scene of an alleged unlawful act or for being a member of the same team as the wrongdoers," *id*. at 7 (internal quotation and citation omitted); and (2) the SAC does not connect each individual Additional City Defendant to the unconstitutional conduct with sufficient specificity, *id*. at 6-7.

#### 1.    Bystander v. Integral Participation.

Defendants are correct that a municipal employee may not be liable merely for being present at the scene of an alleged constitutional violation. "A person subjects another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Preschooler II v. Clark County Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (internal quotations and citations omitted). As such, a state actor who is merely a bystander to his colleagues' conduct cannot be found to have caused any injury. *Hopkins v. Bonvicino*, 573 F.3d 752, 770 (9th Cir. 2009). However, a state actor may be potentially liable under

8

1   1983 even if they did not directly engage in the unconstitutional conduct if they were "integral

2   participants" in the constitutional violation. *See Boyd v. Benton County*, 374 F.3d 773, 780 (9th Cir.

3   2004).

4          "Integral participation" does not require that each actor's conduct rise to the level of a

5   constitutional violation on its own. *Id*. However, a defendant does not become an integral participant

6   simply by being present at the scene of an alleged unlawful act. *Jones v. Williams*, 297 F.3d 930, 938-89

7   (9th Cir. 2002). Integral participation requires some "fundamental involvement" in the conduct that

8   allegedly caused the violation. *Blankenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007)

9   (citing *Boyd*, 374 F.3d at 780). In *Boyd*, where a group of SWAT officers executing a search warrant

10  deployed a "flash-bang" device without any warning into a room containing innocent, sleeping

11  bystanders, the Ninth Circuit noted three factors that contributed to a finding of integral participation by

12  every officer on the team: (1) the other team members "stood armed" behind the individual that

13  deployed the flash-bang; (2) each officer "participated in some meaningful way in the search operation";

14  and (3) each officer participated in the search knowing that a flash-bang would be used without

15  objecting. *Boyd*, 374 F.3d at 780. Generalizing from *Boyd's* holding, an individual section 1983

16  defendant is "fundamentally involved in the alleged violation when they provide some affirmative

17  physical support at the scene of the alleged violation and when they are aware of the plan to commit the

18  alleged violation or have reason to know of such a plan, but do not object." *Monteilh v. County of Los*

19  *Angeles*, 820 F. Supp. 2d 1081,1989 (C.D. Cal., July 12, 2011) (reviewing relevant cases); *see also*

20  *Castaneda v. Douglas Cnty. Sheriff's Investigator Rory Planeta*, 2007 WL 160816, *6 (D. Nev. Jan. 17,

21  2007) ("[T]he following two requirements must be demonstrated for an individual to be considered an

22  integral participant in an excessive force claim. First, the officer must be more than a mere bystander to

23  the underlying police action. Rather, the officer must be performing some function necessary to the

24  completion of a police goal. Second, the officer must continue in his actions despite knowing that the

25  actions ultimately constituting excessive force will occur, regardless of whether the officer knows those

26  actions, in fact, constitute excessive force.") (internal citations omitted). In contrast, in *Torres v. City of*

*Los Angeles*, 548 F.3d 1197, 1206 (9th Cir. 2008), the Ninth Circuit found an officer was not an integral participant in an unlawful arrest where she was not present when plaintiff was arrested, did not instruct other officers to arrest the plaintiff, and was not consulted before the arrest was made.

Accordingly, to allege that the Additional City Defendants were "integral participants," in any section 1983 violation, Plaintiffs must allege facts that reasonably infer: (1) each defendant was "fundamentally involved" in the alleged violation, by, for example providing some affirmative physical support at the scene of the alleged violation; and (2) that each defendant was aware of the plan to commit the alleged violation or have reason to know of such a plan, but did not object. See *Monteilh,* 820 F. Supp. 2d at 1989. Whether or not the actor recognizes the conduct as unconstitutional is not dispositive. *See Castaneda,* 2007 WL 160816, at *6.

### 2.   Does the SAC Allege Integral Participation by the Additional City Defendants With Sufficient Specificity?

Defendants assert that the SAC has not properly alleged each Additional City Defendant participated in any constitutional violation. The SAC alleges that Municipal Employee Defendants "seized and immediately destroyed" essential belongings of each of the individual Plaintiffs. SAC ¶ 29 (Theresa Calmer and Julian Fernandez); *see also* SAC ¶ 35 (Luis Sanchez); SAC ¶ 38 (Melissa Ohler and Joshua Deen); SAC ¶ 43 (Angelita Soto); SAC ¶ 48 (Gloria Williams). For example, the section of the SAC addressing the specific experiences of Theresa Calmer and Julian Fernandez alleges, among other things:

> Acting at the direction of the City Defendants and jointly with the Fresno Police Defendants, the Municipal Employee Defendants, and employees of CalTrans acting at the direction of defendant Dougherty, seized and immediately destroyed essential belongings of plaintiffs Teresa Calmer and Julian Fernandez, including their clothing, their furniture, their personal papers, photographs, books, electronics, and other property and their dwelling, including the materials of which the dwelling had been constructed, which constituted valuable personal property in itself.

SAC ¶ 29. Municipal Employee Defendants also allegedly told Ms. Calmer and Mr. Fernandez that their property would not be destroyed if they cleaned up trash on the street, yet destroyed their property anyway. SAC ¶ 30.

These paragraphs are sufficient to allege Municipal Employee Defendants were "fundamentally involved" in the alleged violation by performing physical actions (e.g., destroying property) at the scene of the alleged violation. The facts also give rise to a reasonable inference that the Municipal Employee Defendants were aware of the plan to destroy the property in question, or had reason to know of such a plan, but did not object. The SAC alleges the sweeps were planned in advance by the City and that Municipal Employee Defendants were directed to seize and destroy Plaintiffs' property. *See* SAC ¶¶ 14-19.

It is true that the SAC does not indicate which Municipal Employee Defendants were present on which of the cleanup dates, nor does the SAC specify which Municipal Employee Defendants destroyed which individual Plaintiff's property. Yet, at this stage of the case, how could such specificity possibly be expected?[4] "As the Court wrote in *Twombly,* Rule 8(a) 'does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' to support the allegations." *Starr v. Baca*, 652 F.3d 1202, 1217 (9th Cir. 2011); *see also Bark v. Chacon*, 2011 WL 1884691 (D. Colo. May 18, 2011) (denying motion to dismiss claims against a group of individual defendants involved in single incident because all the grouped defendants were law enforcement officials alleged to have been present at the incident and to have acted in concert, reasoning that "[w]hile Plaintiff has not alleged which specific Defendant committed which specific act during the incident in question, it would be unfair to require Plaintiff to do so based on the circumstances alleged....")[5]; *Filipek v. Krass*, 576 F. Supp. 2d 918, 923 (N.D. Ill. 2008) (pre-*Iqbal*) (refusing to dismiss allegations against a group of officers alleged generally to have either used excessive force or failed to stop other officers from doing so, where plaintiff provided the names of all officers alleged to have taken part in the arrest, and the date and location of the arrest, thereby giving

---

[4] Defendants suggest that the SAC must allege that Plaintiffs "knew the names of the Additional City Defendants" and/or "describe any communication with them," Doc. 80 at 3, but fail to cite any authority for this proposition.

[5] Defendants' effort to distinguish *Chacon* because that case involved a single incident is unpersuasive. The present case involves a pattern of conduct that extended over a period of months. At the pleading stage, it would not be fair to require Plaintiffs to isolate which Municipal Employee Defendant participated in which sweep and destroyed which Plaintiffs' property.

defendants sufficient notice to enable them to begin to investigate and prepare a defense).

The sufficiency of the SAC's allegations against the Police Officer Defendants is a closer question. The SAC alleges that "[a]cting at the direction of the City Defendants and jointly with the Fresno Police Defendants, the Municipal Employee defendants, and employees of CalTrans acting at the direction of defendant Dougherty, seized and immediately destroyed essential belongings of plaintiffs...." SAC ¶ 29 (Theresa Calmer and Julian Fernandez); *see also* SAC ¶ 35 (Luis Sanchez); SAC ¶ 38 (Melissa Ohler and Joshua Deen); SAC ¶ 43 (Angelita Soto); SAC ¶ 48 (Gloria Williams). While this alleges that Municipal Employee Defendants actually "destroyed" property, it does not indicate how the Fresno Police Defendants acted "jointly" with them. Did they physically participate in the destruction of property? Or did they perform other functions? The allegations are not clear in this regard.

However, the SAC contains a section entitled "All Plaintiffs," which alleges, among other things, that the Municipal Employee Defendants and Police Officer Defendants prevented homeless individuals and/or homeless advocates from retrieving property or stopping the destruction of property, and threatened those individuals and advocates with arrest:

> Plaintiffs are informed and believe and based thereon allege that efforts by homeless individuals, including plaintiffs in the currently consolidated actions, and by homeless advocates to retrieve property or stop its destruction were prevented by officers of the Fresno Police Department and that individuals who sought to retrieve their property were threatened with arrest by the Police Officer Defendants and Municipal Employee Defendants.

SAC ¶ 52. The Plaintiff-specific allegations indicate that "Defendants" have threatened individual Plaintiffs in this case with arrest. *See* SAC ¶ 32 ("Defendants have [] forced Plaintiff Julian Fernandez to move, forced him to take down his limited shelter, and continue to threaten him with arrest and/or destruction of his property with no or inadequate notice."); SAC ¶ 40 ("Defendants [] have forced plaintiffs Joshua Deen and Melissa Ohler to move, forced them to take down their limited shelter, seized and destroyed their property on subsequent occasions, and continue to threaten them with arrest and/or destruction of their property with no or inadequate notice."); SAC ¶ 44 ("[D]efendants have forced

1 [Angelita Soto] to move, forced her to take down her limited shelter, seized and destroyed her property

2 on subsequent occasions, and continue to threaten her with arrest and/or destruction of her property with

3 no or inadequate notice."); SAC ¶ 48 ("[Gloria Williams] sought to recover her belongings from the

4 trucks, specifically the box and urn containing her mother's ashes. Defendants refused to allow adequate

5 access to plaintiff and informed her that she would be arrested if she attempted to look for it herself.");

6 SAC ¶ 50 ("[D]efendants have forced plaintiff Gloria Williams to move and continue to threaten her

7 with arrest and/or destruction of her property with no or inadequate notice."). The SAC is broad enough

8 in its allegations to infer that it was the Police Officer Defendants, *inter alia*, who threatened Plaintiffs

9 with arrest. While not every Plaintiff claims to have been threatened with arrest, arrest threats are

10 sufficient to render actors "integral participants" in any of the constitutional violations.

11        Defendants' motion to dismiss the Section 1983 claim is DENIED.

12 **B.**    **California Constitutional Claims Against Additional City Defendants.**

13        Defendants also move to dismiss the Claims against the Additional City Defendants under

14 Article 1, § 13 (right to be free from unreasonable search and seizure), Article 1, § 7(A) (right to life,

15 liberty, and due process of law), and Article 1 § 7(A) (equal protection) of the California Constitution on

16 the ground that Defendants must personally participate in a constitutional wrong. However, there is

17 authority to support application of the "integral participation" doctrine to California Constitutional

18 claims. *See Nelson v. City of Davis*, 709 F. Supp. 2d 978, 987-89 (E.D. Cal. 2010) (relying in part on

19 integral participation doctrine to deny summary judgment on excessive force claims under federal and

20 California Constitutions). Accordingly, to the extent the section 1983 claims against the Additional City

21 Defendants survive dismissal, so too do the parallel California Constitutional claims. Defendants'

22 motion to dismiss the California Constitutional claims is DENIED.

23 **C.**    **Breach of Contract Claim Against Additional City Defendants.**

24        Additional City Defendants move to dismiss the breach of contract claim, which alleges that the

25 City's execution of the Settlement Agreement in the prior, related case of *Kincaid v. city of Fresno*,

26 1:06-cv-01445 OWW SMS, constituted a contractual promise to refrain from destroying their property

1  without notice and/or reasonable opportunity to recover that property. SAC ¶ 97. Plaintiffs allege that

2  they have complied with the terms of the *Kincaid* Settlement, SAC ¶ 99, and that the City and

3  Defendants Weathers, Dyer and Caltrans have breached their obligations under the agreement, SAC ¶

4  100. This claim is not asserted against the Additional City Defendants and Plaintiffs do not oppose

5  dismissal of any such claim against the Additional City Defendants.

6      Accordingly, Defendants' motion to dismiss the breach of contract claim is GRANTED as to the

7  Additional City Defendants. Leave to amend has not been requested, and, frankly, had it been, this Court

8  should not be used to ghost write a complaint by way of rulings on motions to dismiss inadequate

9  complaints.

10  **D.    California Bane Act Claim Against Additional City Defendants.**

11      Plaintiffs' eighth claim for relief arises under California Civil Code Section 52.1, the so-called

12  "Bane Act," which permits a private right of action for damages:

13          If a person or persons, whether or not acting under color of law, interferes by threats,
            intimidation, or coercion, or attempts to interfere by <u>threats, intimidation, or coercion,</u>

14          with the exercise or enjoyment by any individual or individuals of rights secured by the
            Constitution or laws of the United States, or of the rights secured by the Constitution or

15          laws of this state...

16  Cal. Civ. Code § 52.1(a) (emphasis added). The December 26, 2012 Memorandum Decision and Order

17  addressing Defendants motions to dismiss the first amended complaint ("FAC") discussed this

18  requirement and whether the previous complaint contained sufficient allegations:

19          Although a complaint need not use the statutory terms "threats, intimidation, or
            coercion," it must allege facts from which the presence of threats, intimidation, or

20          coercion may be inferred. *See Lopez v. County of Tulare*, 2012 WL 33244, *11 (E.D. Cal.
            Jan. 6, 2012).

21

22          Plaintiff has alleged a large-scale operation in which City of Fresno employees destroyed
            large numbers of shelters and discarded more than 200 tons of material belonging to
            homeless persons using heavy equipment. FAC ¶ 21. The FAC essentially alleges two

23          types of threatening conduct. First, Plaintiff suggests that the demolition itself was
            conducted in a threatening manner because of the number of individuals involved and the

24          use of heavy equipment. "The text of the Bane Act ... indicates that a cause of action
            under the act requires a predicate—the application of threat, intimidation or coercion—

25          and an object—interference with a constitutional or statutory right." *Rodriguez v. City of
            Fresno*, 819 F. Supp. 2d 937, 953 (E.D. Cal. 2011). For example, if the object is

26          interference with the right to be free from the use of force or the threat of force, a

14

violation of that right cannot also satisfy the predicate requirement of the application of threat, intimidation or coercion. *Id*. Here, the FAC suggests the cleanups may have been pursued in a manner that was inherently intimidating (i.e. above and beyond that which was necessary to effectuate the cleanup). Although such allegations might, in a general sense, be sufficient to survive a motion to dismiss, the FAC fails to connect each Individual Defendant to the intimidating nature of the cleanups. For this reason, the Individual Defendants' motion to dismiss any Bane Act claim of this nature is GRANTED WITH LEAVE TO AMEND. If amended, amend with provable facts.

In addition, the FAC alleges that Plaintiff was informed and believed that Fresno Police Department officers threatened some individuals who sought to retrieve their property with arrest. *Id*. The Individual Defendants argue that the "information and belief" of a threat of arrest is insufficient. Doc. 38-9 at 10. However, the FAC also alleges that the knowledge of these threats intimidated Plaintiff and "made him fearful for his safety and of arrest or retaliation should he attempt to recover his property." *Id*. The relevant inquiry under the Bane Act "is whether a reasonable person, standing in the shoes of the plaintiff, would have been intimidated by the actions of the defendants and have perceived a threat of violence." *Richardson v. City of Antioch*, 722 F. Supp. 2d 1133, 1147 (N.D. Cal. 2010). The FAC contains sufficient factual allegations to suggest a reasonable person would have been intimidated by the FPD Officers' conduct. The problem is: the FAC does not name any individual FPD Officers as Defendants and fails to connect any of the named Individual Defendants to the alleged arrest threats. The moving Individual Defendants' motion to dismiss any Bane Act claim based upon threat of arrest is GRANTED WITH LEAVE TO AMEND.

*Sanchez*, 2012 WL 6719556, * 26 (footnote omitted).

The Bane Act's requirement that interference with rights must be accomplished by threats, intimidation, or coercion has been the source of much debate and confusion. The December 26, 2012 Decision adopted the position that even where the interference is "with the right to be free from the use of force or the threat of force, a violation of that right cannot also satisfy the predicate requirement of the application of threat, intimidation or coercion," requiring separate proof of threat, intimidation or coercion. *Id*. (internal quotation and citation omitted). However, a recent Northern District of California case has persuasively discussed why the statute does not require a separate showing of coercion in most cases:

Bane Act liability extends only to rights violations accompanied by "threats, intimidation, or coercion." *See* Cal. Civ. Code § 52.1; *Venegas*, 32 Cal.4th at 843, 850–51 (Baxter, J. concurring) (characterizing burden of showing "threats, intimidation, or coercion" as minimal: "it should not prove difficult to frame many, if not most, asserted violations of any state or federal statutory or constitutional right, including mere technical statutory violations, as incorporating a threatening, coercive, or intimidating verbal or written component").

15

Defendants here argue that, to adequately allege a Bane Act violation, Plaintiffs must allege "threats, intimidation or coercion" separate and independent from the wrongful conduct constituting the rights violation, citing *Shoyoye v. County of Los Angeles*, 203 Cal. App. 4th 947, 961 (2012). In *Shoyoye*, a computer error resulted in the unlawful detention of a prisoner that had been ordered released. The *Shoyoye* court held that "the statute requires a showing of coercion independent from the coercion inherent in the wrongful detention itself." That court made clear that the basis of its holding was that plaintiff's evidence

> showed only that County employees were negligent in assigning to Shoyoye a parole hold in the computer system, and in failing to detect the error during the subsequent quality control procedure.... Any intimidation or coercion that occurred was simply that which is reasonable and incident to maintaining a jail.

*Id*. Distinguishing [*V]enegas*, the *Shoyoye* court observed that, in the former case, probable cause "eroded at some point, such that the officers' conduct became intentionally coercive and wrongful, i.e., a knowing and blameworthy interference with the plaintiffs' constitutional rights," whereas in the latter, "[t]he coercion was not carried out in order to effect a knowing interference with Shoyoye's constitutional rights." *Id.* Defendants read *Shoyoye* to create a requirement in all Bane Act cases that constitutional interference must be accompanied by "threats, intimidation, or coercion" separate and apart from the rights violation. Although "federal district courts interpreting *Shoyoye* continue to disagree about its significance," *Cardoso v. Cnty. of San Mateo*, 2013 WL 900816 (N.D. Cal. Jan.11, 2013), this Court agrees with other courts holding that, at the pleading stage, the relevant distinction for purposes of the Bane Act is between intentional and unintentional conduct, and that *Shoyoye* applies only when the conduct is unintentional. *See, e.g., Bass v. City of Fremont*, 2013 WL 891090 (N.D.Cal. Mar.8, 2013).

In *Bass*, the court sustained a Bane Act claim where the plaintiff's allegedly unconstitutional "detention and arrest resulted from the officers' action, rather than their inaction." The court concluded that "*Shoyoye* is best viewed as a carve-out from the general rule stated in [*V]enegas*. In *Shoyoye*, the plaintiff's overdetention resulted from the negligent inaction of administrators, whereas in [*V]enegas*, the defendant officer engaged in a series of actions involving 'threats, intimidation, or coercion' that resulted in the plaintiff's unreasonable seizure and wrongful arrest." *Id.* at * 6–7. *See also Holland v. City of San Francisco*, 2013 WL 968295 (N.D. Cal. Mar.12, 2013) (rejecting Defendants' Shoyoye argument because plaintiff alleged intentional, not unintentional, interference with constitutional rights); *Skeels v. Pilegaard*, 2013 WL 970974, at *4 (N.D. Cal. Mar.12, 2013) (distinguishing *Shoyoye* because plaintiff's alleged harms "were not brought about by human error, but rather by intentional conduct, conduct which could be reasonably perceived as threatening, intimidating, or coercive"). *See also Cardoso*, 2013 WL 900816, at * 1 (N.D. Cal. Jan.11, 2013) (denying motion to dismiss based on *Shoyoye* because plaintiff's Bane Act claim "may turn on details about the alleged application of excessive force—details which are unavailable at this early stage in the litigation").

*M.H. v. Cnty. of Alameda*, 2013 WL 1701591 (N.D. Cal. Apr. 18, 2013). This Court adopted this approach in a recent decision. *Dillman v. Tuolumne Cnty.*, 2013 WL 1907379, *19-21 (E.D. Cal. May 7,

1    2013).

2           There is no need to disturb the law of the case previously applied to this litigation,[6] as the

3    December 26, 2012 Decision accepted the possibility that a Bane Act claim could be made out if the

4    cleanups were pursued in a manner that was "inherently intimidating (i.e. above and beyond that which

5    was necessary to effectuate the cleanup)." *Sanchez*, 2012 WL 6719556, * 26. The Bane Act claim in the

6    FAC was nevertheless dismissed because it failed "to connect each Individual Defendant to the

7    intimidating nature of the cleanups." *Id.* The SAC does so as to certain Original City Defendants. For

8    example, the SAC alleges Defendant Swearengin "directed the presence of Fresno Police defendants and

9    the use of bulldozers and other heavy equipment." SAC ¶ 14. The SAC contains similar allegations as to

10   Defendants Scott and Rudd. SAC ¶¶ 15 & 16. However, no such connection is made with the other

11   Original City Defendants.

12          The Municipal Employee Defendants are alleged to have implemented the cleanups. Although

13   the SAC does not indicate that every cleanup used heavy equipment or other techniques that went

14   beyond that which was necessary to effectuate the cleanup, the Plaintiff-specific allegations indicate

15   such techniques were utilized in the cleanups that impacted Joshua Deen and Melissa Ohler, SAC ¶ 38,

16   as well as Gloria Williams, SAC ¶ 48. For pleading purposes, the SAC makes a sufficient connection

17   between the Municipal Employee Defendants and intimidating conduct.

18          Alternatively, the December 26, 2012 Decision indicated the Court would accept evidence of

19   arrest threats made in connection with the cleanups, if Plaintiffs could name individuals who made the

20   threats and connect the remaining Individual Defendants to those threats. *Sanchez*, 2012 WL 6719556, *

21   26. As described above, the SAC sufficiently alleges that the Police Officer Defendants made arrest

22   threats to several Plaintiffs.

23

24   ─────────────────────

[6] The law of the case doctrine generally precludes a court from "reconsidering an issue that already has been decided by the same court, or a higher court in the identical case." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997).

25   Regardless, a court may "depart from the law of the case where: 1) the first decision was clearly erroneous; 2) an intervening change in the law has occurred; 3) the evidence on remand is substantially different; 4) other changed circumstances exist; or

26   5) a manifest injustice would otherwise result." *Id.* at 876.

1   The Additional City Defendants' motion to dismiss is the Bane Act claim is DENIED.

2   **E.      Intentional Infliction of Emotional Distress Claim Against Additional City Defendants.**

3           Plaintiffs' ninth claim for intentional infliction of emotional distress ("IIED") is presumably

4   leveled against all defendants, as no specific defendants are excluded. SAC at ¶¶ 87-90. Under

5   California law, "[a] cause of action for intentional infliction of emotional distress exists when there is

6   (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard

7   of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional

8   distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous

9   conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (internal quotation omitted). "A defendant's

10  conduct is outrageous when it is so extreme as to exceed all bounds of that usually tolerated in a

11  civilized community." *Id*.

12          Defendants argue that the SAC does not set forth "appropriate" allegations against each of the

13  Additional City Defendants, in part because Plaintiffs have not alleged any "interaction" with any of the

14  Additional City Defendants. In response, Plaintiffs first suggest that no "personal interaction" is required

15  to make out an IIED claim, citing *Golden v. Dungan*, 20 Cal. App. 3d 295 (1971). Plaintiffs point out

16  that in *Golden,* the court found that a husband and wife made out an IIED cause of action against an

17  individual who "caused" process to be served at their home late at night in a loud and "boisterous

18  manner." How Plaintiffs derive from this case a rule that no personal interaction is required in an IIED

19  claim is a mystery. The defendant in *Golden* pounded on plaintiffs' door in the middle of the night,

20  waking up the occupants and their neighbors. *Id*. at 310. The fact that the Court used the term "caused"

21  to describe this conduct does not change the facts of the case. This is without question personal

22  interaction between the defendant and the plaintiff. [7]

23          As discussed above, although the SAC does not specifically allege which Municipal Employee

24  _____

25  [7] Defendants also point out that public employees are immune under California law "an injury resulting from his act or
    omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such
26  discretion be abused." Cal. Gov. Code 820.2. This further undermines Plaintiffs' position that no personal interaction is
    required.

1  Defendants interacted with the individual Plaintiffs on which occasions, the SAC does allege that

2  Municipal Employee Defendants destroyed their personal property, property that had important personal

3  value. This is sufficient to allege "interaction" with the Municipal Employee Defendants for pleading

4  purposes. Likewise, the SAC sufficiently alleges that the Police Officer Defendants contributed to the

5  cleanup activities by, among other things, threatening several individual Plaintiffs with arrest. This is

6  sufficient for pleading purposes to include them in the IIED claim.

7      Accordingly, Defendants' motion to dismiss the IIED claim is DENIED.

8  **F.    Conversion Claim Against Additional City Defendants.**

9      Plaintiffs' tenth claim for conversion also is presumably leveled against all defendants, as no

10  specific defendants are excluded. SAC at ¶¶ 91-95. "The elements of a conversion claim are: (1) the

11  plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful

12  act or disposition of property rights; and (3) damages. Conversion is a strict liability tort." *Burlesci v.*

13  *Petersen*, 68 Cal. App. 4th 1062, 1065 (1998). A cause of action for conversion can be based on either

14  the taking of property or its intentional destruction or alteration. 5 Witkin, Summary of Cal. Law (10th

15  ed. 2005) Torts, §§ 710 (specifically indicating that "tossing homeless person's property into trash" may

16  constitute conversion), 711, pp. 1034–1035 (Witkin Summary).

17      Defendants challenged the conversion claim in the FAC, arguing that then solo Plaintiff Louis

18  Sanchez had not alleged sufficiently that each Defendant's conduct was a substantial factor in causing

19  Plaintiff's harm. The December 12, 2012 Decision rejected this argument:

20      The FAC details each Individual Defendant's role in designing and implementing the
       unwritten policy and practice that underpinned the cleanups at issue in this case. For

21      example, it is alleged that Defendant Swearengin personally authorized and directed the
       demolition of Plaintiff's shelter and the destruction of his personal property. FAC ¶ 9.

22      The FAC contains similar allegations of personal involvement as to each Individual
       Defendant. This is more than sufficient for pleading purposes.

23  *Sanchez*, 2012 WL 6719556, * 27.

24      Additional City Defendants now argue that Plaintiffs cannot maintain a conversion claim against

25  them because the allegations against them in the SAC "do not come close to containing the same

26

19

specificity." Doc. 69-1 at 14. As an example to support this argument, Defendants compare the allegations against Defendant Mark Scott in paragraph 15 of the SAC with paragraph 21, which describes the "Municipal Employee Defendant" group. This is not a fair comparison. Viewing the SAC as a whole, Plaintiffs have alleged that the Municipal Employee Defendants physically carried out the cleanups. According to the SAC, they were the individuals who actually carried out the conversion. The same cannot be said for the Police Officer Defendants, as the SAC does not allege any conduct on their part that could give rise to a claim for conversion.

Accordingly, Defendants' motion to dismiss the conversion claim against the Additional City Defendants is DENIED as to the Municipal Employee Defendants and GRANTED WITHOUT LEAVE TO AMEND as to the Police Officer Defendants. The Court gives the Plaintiffs credit at this juncture for pleading its best facts and allegations, thereby telling the Court that the pleadings are as adequate as possible under the facts that exists.

### V. <u>CONCLUSION</u>

For the reasons set forth above, Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART. Leave to amend is not warranted as to the conversion claim against the Police Officer Defendants.

IT IS SO ORDERED.

Dated:   **May 14, 2013**                    **/s/ Lawrence J. O'Neill**
                                      UNITED STATES DISTRICT JUDGE